There you go. Okay, we are all assembled. Welcome to the First District, First Division of the First District Appellate Court of Illinois. We are here today to hear oral arguments in the case of Brayboy v. Advocate Health, case number 1-22-1846. My name is Terry Lavin, and I'll be presiding today along with my colleagues, Justice Aurelia Paczynski and Justice Mary Ellen Coghlan. We have some experienced lawyers here, so I'll give you the general thing that we try to do in our division, and that's give you about 20 minutes or so apiece. If we unduly burden you with questions, we'll give you more time. Collin should save some time for rebuttal. So, Mr. Reagan, why don't we start out with you for the appellant? Thank you, Your Honor. May it please the Court, Mr. Griffin, my name is Mike Reagan, and together with Joseph Balestri and Kate Conway, we represent Christina Brayboy, the mother of her deceased son, Benjamin Mathis. The fundamental question on this appeal is whether a question of fact exists which would permit the plaintiff to proceed to trial on this wrongful death claim concerning the death of her very young son. Whether Dr. Antonioli was an apparent agent of Advocate is a fact question, on which the plaintiff has a right to a jury trial unless summary judgment was properly entered. Gilbert plainly says that. Pointedly, for purposes of this appeal, Gilbert went on to state that whether, I'm quoting, whether a person has notice of the lack of an agent's authority or is put on notice by circumstances is likewise a question of fact. Whether notice to the plaintiff was sufficient to meet Advocate's burden to put their patients on notice of the independent status of their professionals is not only a question of fact, but it is a question of fact on which Advocate has the burden of proof. That's the structure of Gilbert. Gilbert is expressly grounded upon what the court called, quote, the two realities of modern hospital care. The court said that the first reality was the business of a modern hospital in which hospitals increasingly hold themselves out to the public in expensive advertising campaigns as offering and rendering quality healthcare services. That was 30 years ago. The velocity of that trend has been increasing ever since. The richly detailed record in this case documents Advocate's advertising efforts. Advocate's director of marketing from 2014 through 2018 managed an annual marketing budget of $15 million. The purpose of those massive expenditures is to convince the public that Advocate offers skilled physicians and complete medical care. Hospitals are now increasingly systematizing, digitizing, and increasing the speed of their interactions with their patients. Cadres of lawyers with no limit on their time and without the pressure of an emergency continually undertake the project of refining the consents and notices which patients are required to sign on the spur of the moment in order to receive needed medical care. In contrast, the patients present to the emergency department without legal training or knowledge, without an understanding of the consequences of what they're being asked to sign, and currently with no obligation on the hospitals to explain the important legal ramifications of those documents. Here, Christina Brayboy was not given the consent and notice ahead of time before she was asked to sign it, even though she had been in the hospital for hours, nor was she given a copy to keep or analyze after signing it. Separate and apart from Christina Brayboy's case, it is now often the experience of patients that consents and notices such as this are digitally displayed with the patient being asked to sign on a small digital screen with a stylus. Increasingly, some circuit courts grant summary judgment solely on the strength of the consent without examining all of the circumstances. If those summary judgments are confirmed, then the cycle is self-perpetuating because the hospital's lawyers take those appellate dispositions and refine the consents and notices even further. Yet nothing is done to educate the body of patients about the consequences of those consents and notices. The volume of hospital advertising increases without the slightest effort to balance the scales by explaining in the advertising or even in any other explanatory documents that many of the doctors whose skills are being extolled are not employees of the hospital and that the hospitals will do everything within their power to not be held responsible for the conduct of those physicians whose status is not initially disclosed. Our briefs document that neither Gilbert nor any other Illinois Supreme Court case which has come after Gilbert has involved facts in which a consent or notice concerning the independent contractor status was involved. Gilbert spoke to the role of notice and the burden upon the hospital to give notes, but there is no guidance in Gilbert as to the manner and time in which that notice must be given. With that as background, plaintiff has presented two main arguments for decision by this court. The first is that the forms used by advocate, the initial consent and notice and the discharge instructions are sufficiently confusing and inconsistent that they cannot serve to negate the holding out and reliance elements as a matter of law, but rather fail to eliminate the questions of fact on those points. The second issue is that questions of fact exist as to whether advocate's initial notice and consent constituted a meaningful notice and whether it was given at a meaningful time. Plaintiff has shown the existence of questions of fact on both elements of her apparent agency claim. Gilbert recognizing the reality of the business of hospitals was specific as to how that has to be done. As far as the facts in Gilbert went, the holding out element is satisfied if the hospital holds itself out as a provider of emergency room care without informing the patient that the care is provided by independent contractors. The element of justifiable reliance on the part of the plaintiff is satisfied if the plaintiff relies on the hospital to provide complete emergency room care rather than upon a specific position. Setting aside for a moment the notice on which advocate relies, there is no doubt that those elements are satisfied in this case. Advocate held itself out strongly and Christina relied on advocate for that care. The analysis then turns to whether there's a fact question, whether advocate informed Christina that the care was going to be provided by independent contractors. Not only is the existence of apparent agency a question of fact, Gilbert expressly stated that the specific question of whether the patient had notice of the lack of an agent's authority is a question of fact. And there's an additional reason why a question of fact is so subtly presented by these cases. The Supreme Court in Petrovich and elsewhere holds that apparent agency functions like an estoppel. So this is not just a plain Jane contractual issue that even though it is packaged by the court in the terms of apparent agency, it's also recognized by several Supreme Court cases that this operates like an estoppel. The question of notice plays a highly specific role in these cases. At a minimum, apparent agency exists by the provision of emergency room care unless that care is provided without notice. As a result, the hospital's claim that it gave notice is treated much like an affirmative defense. Kane versus Doctors Hospital states that silence is sufficient for liability to attach and that quote, the burden is on hospitals to put their patients on notice from the independent status of the physicians. Cases demonstrate the need for practicality in these situations. Even the existence of a clear disclaimer of agency might not be dispositive. And all of the other circumstances surrounding the care are to be examined. And those circumstances can still result in a case being given to the jury for decision even where there is a clear disclaimer. Advocates documents here are not so conclusively clear that they can be found to be effective as a matter of law. Even before we take up the other circumstances in this case, we know that the documents here are far from being clear in advocates attempt to disclaim agency. The first document, the entirety of which is in our appendix at A29, is three single space pages and is captioned only healthcare consent. The font is exceedingly small, which is one of the reasons we put the entirety of it in our appendix. And we weren't being facetious when we wrote in our brief that there is no court in Illinois which would accept the document that looked like that, let alone that there would be a judge who would be willing to read it. Paragraph two in that consent has the heading coordination of care. It asks the patient to understand that advocate is a clinically integrated health system that is comprised of multiple hospitals, medical groups and other healthcare provider entities that all work together. It further states that the interdisciplinary care team is comprised of employees, contractors, agents and medical staff, members of advocate among others who work together for admission, treatment and discharge. That paragraph alone blurs the distinctions among the people the patient will encounter and assures the patient that employees and medical staff members will quote, all work together for treatment of the patient. It does not offer the slightest inkling that there might be a doctor who was not part of quote advocates interdisciplinary care team which works together and who is not an employee or agent of advocate. Advocate puts all of it through lines from paragraph 14 of that same consent. The entirety of that long paragraph also single space and in the same small font size as the rest of the three pages far tinier and such that the defendant apparently found the need to retype it in legible font into its brief. It says only those physicians who are clearly identified as advocate employees are employees or agents of advocate healthcare. It doesn't say how advocate employees are to be quote identified. It says that non-employed physicians are independent providers who are permitted to use the hospital facilities to render care. Non-employed physicians include but are not limited to those practicing emergency medicine. Consent goes on to say several sentences later that the decision to seek care at the hospital was not based upon reliance. Saying that the hospital uses independent contractors or practitioners described elsewhere is far from clear in saying that the doctor who treated Benjamin was in fact not an agent or employee of advocate. Paragraph 14 does not say that none of the physicians who attend me are not employees as was found to be sufficient in the Lamb hyphen Rosenfeld case. It doesn't say that. Defendant will say that Dr. Antonioli was someone quote practicing emergency medicine but it's not clear that that is what Dr. Antonioli especially was if in fact it was that. As far as Christina goes, might he have been a pediatrician or a general practitioner or a hospitalist? She didn't know and she had no means of knowing. Advocate didn't tell her. But that consent is not the only controlling document. The discharge instructions are a critical aspect of determining whether advocate has met its burden of demonstrating that no question of fact exists on his disclaimer. This is the only document which Christina was given. It makes no distinction among the physicians at advocate and it plainly states that Benjamin had just been treated by advocate personnel. After first thanking Christina for choosing Good Samaritan, that document significantly states quote, our physicians and clinical staff are committed to quality and service. We examined and treated you on an emergency basis and Good Samaritan Hospital would like to thank you for allowing us to assist you. It says nothing about independent contractors, people not being employees or anything else. Advocate might say that Christina would have to refer back to the consent to read the discharge instructions in context, but the discharge instructions don't say that nor anything like it. And she was never given a copy of the consent but those are jury questions, not something properly decided on a motion for summary judgment. The timing of advocates attempt to disclaim responsibility matters in this case. I'm gonna take up timing in greater length in the next section of this argument, but it was the topic of timing matters at this point in light of the opinion in Bilbrey versus Garcia from the fifth district and reversing summary judgment, the court held that quote, we find there is a genuine issue of material fact as to whether the independent contractor disclosure in the consent form provide the plaintiffs with timely notice of the doctor's employment. I know the court is very familiar with the facts of this case and in light of the running of time here and that I have to save some, I'm not gonna go into the timing of the facts because the court has those. Justice McDade in a recent case, which we've cited in the first Midwest versus Ottawa Regional Hospital, she wrote in a separate opinion and in both dissenting and concurring and in the dissent part of that opinion, she said, nowhere does the hospital explain the practical or legal significance of its statement to the patient. It seems evident that if there is something you want understood by someone, you present it in straightforward terms. Nowhere does it disclaim any possible legal liability of the hospital. This authorization provides lawyers a basis to argue legal theory with other practitioners in the courts, but it is not relevantly informative for a large portion of people seeking emergency medical care. Now, all of that's not here for decision today, but what is here for decision is whether a question of fact exists and it plainly does and therefore summary judgment was erroneously entered. We developed in our brief, the second issue at which I wish to talk about briefly, although I'd love to talk about it for an hour, but I don't think I'm gonna be allowed to, is that the law on these issues is uniform around the country. Gilbert drew upon the law of eight states in formulating its holding, and it quoted and adopted the Pamperin decision from the Supreme Court of Wisconsin verbatim in articulating the rule in Illinois. And we have shown that after that, other states rely upon Gilbert and also expressly state in great detail that the law is essentially uniform. The defendant, we've also pointed out that no Illinois Supreme Court since neither Gilbert nor any Supreme Court case since Gilbert has dealt with a case in which there was a contention that a consent or notice disclosed an independent agent. And therefore this is a fresh turf upon which the court to operate. Defendant does not challenge that assertion nor has defendant challenged what we have said in great detail about what the law is on the question of meaningful notice at a meaningful time around the country. They have a heading in their brief, which is a very scant page long, which says the case has to be decided under the law of- Well, let's talk about particular and start going down this road. The Clark case, which followed Gilbert. How does that illuminate the issues in this case? Well, Clark is a case which many states have relied upon and the Ohio Supreme Court a year after Gilbert and relying upon Gilbert said the quote as to notice to the plaintiff that care is being provided by independent medical practitioners. We stress that such notice to be effective must come at a meaningful time. And then that concept is picked up by many states. I think Maryland to follow up with what the court has just asked me in 2022 in Williams versus Dimensions Health said offered what it called a representative sample of the reasoning of the vast majority of cases dealing with vicarious liability and under the heading within the opinion of the meaningfulness of any effort to negate the appearance said any notice that an emergency room physician is an independent contractor must be made in a meaningful way at a meaningful time, i.e. when it can be a factor in a patient's choice to obtain treatment at the hospital. Let me also ask you that the trial court here was quite troubled by the facts of this case. And it seems to me that the trial court was not aware of Clark or these cases from around the country that had developed this quote trend. But what was troubling the court when hearing the arguments in this case? Yes, so even though we're here on de novo review, I quoted the trial court at length because he was in fact troubled. Competent defense counsel says we were playing for sympathy. We weren't. The court said, I'm troubled. He said, but I don't see, I don't find the answer in the cases. And he talked about what is this woman to do there with a very sick three-year-old and a one-year-old under the arm and it's approaching midnight. And how was this, what were her options? So that's what troubled the court. The plaintiff argued below to the trial court that the notice was not meaningful and that it had to be meaningful and that the timing was wrong. The court asked defense counsel, is the timing something that I could look at here? And defense counsel said, no, it's not. Gilbert only says the notice has to be given and that that's the end of it. We have noted briefly that, I believe that defense counsel, I've explained it in the brief, found an article from elsewhere, a legal education article, which talked about the law in other states. And he merely said that concept doesn't apply, but he did not identify those cases to the court. If he had, the court would have had something to look at. So we would ask- Mr. Reagan, I wanna just point out that during that same hearing, the court specifically asked, what were this mom's options? And Mr. Lamaneni said she could leave. And when I read that, I thought that was probably the thing that really troubled the court. You got the sick child, he's been being treated. She's supposed to scoop him up in her arms and go someplace else at midnight. I think that'd be troubling to anybody, but that's what I was thinking was troubling. Yeah, and I agree. So the court said, what were her options? I forget the exact language, but that clearly, clearly it is. You're correct, Justice Bluchensky. That's what bothered the court. And I mean, think about it. They would have to redress the kid. Well, she has to read three pages of fine print. Right. And then on top of that, she has to just figure out what's an independent contractor. And then on top of that, she has to say, no, I'm not gonna sign this. I'm gonna scoop up my sick child and go someplace else at midnight after you've already started treating him. That to me sounded like it was troubling the trial court judge. He, and that's why I quoted him at length, because time after time, the anguish comes through in what to do. And yet he did not have a case to help them. And we believe that the opinion in this case will offer that. We have also documented in our brief as much as we could and in great depth that cases around the country say that the notice has to be meaningful and it has to be given at a time when it could be a meaningful factor in the patient's decisions. Okay. Let's hear from Mr. Griffin. Thank you, Your Honor. Thank you, Judge. Please the court. Hugh Griffin for Advocate Health and Hospital Corporation, DBA, Advocate Good Samaritan Hospital. Yes, the trial court was concerned about this case and he looked at it twice. And he looked at our established body of law that's come along for the last 30 years since Gilbert. And he was concerned about the subjective factor in this case, about the mother. She's there in the emergency room with a small child that's sick and another child under tow. But we've had six or seven other emergency room cases. Gilbert itself was an emergency room case. And Gilbert, again, the fundamental rule is that the patient knows or should have known that the treating physician is an independent contractor and the hospital will not be held liable. There's nothing in Gilbert that the notice has to be given in any certain time for a patient to do something, to go somewhere else or make a different decision. That's not in Gilbert. And it hasn't been in any of our cases, Wallace, Rosado, Boer, Mizek. Those are all emergency room cases. Even if they're not in Illinois cases, aren't these cases from other states, if not binding, can't they be persuasive? I don't think they can. If we didn't have any law, if we didn't have this, as you said in Delgado, this substantial body of law that's developed over the last 30 years, if we didn't have that, what are we gonna do? What's our law gonna be? Well, let's look at other states. Ms. Scriven, isn't the very nature of an emergency room significantly different than everything else that goes on in a hospital? They call it an emergency room for a reason because there's an emergency. So having independent contractors and telling people, oh, these doctors are independent contractors in an emergency room where there might be a life and death situation where a mom is hysterical about her child being so sick. A mom is trying to take care of her very sick child where somebody comes in with broken bones or a gunshot. Isn't that so significantly different than everything else that goes on in a hospital that we have to allow for some other way to look at it? Well, you're going to have to overrule, I guess, at least half a dozen cases that have been emergency room cases. We've had cases like Wallace where the patient was already in surgery when the mother got there and signed the consent form. So, I mean, you can find that concept in other states. Let me just ask you, let me just ask you. So guys in the surgery, mom gets a consent form. She says, I'm not going to sign this. I don't want to deal with an independent contractor. I want to deal with the hospital. She's supposed to leave and take him out? Judge, I don't think that's part of the equation. Let's go back, let's go back. The statement in the trial court was her option was to leave, pick up the kid and leave, pick up a guy from the operating room and leave. Is that the option? I don't think that's an option. No, I don't. No, I don't think that's an option. Well, then I think we agree on that. We agree on that. But we don't agree that that's determinative. I mean, let's go back. I don't think it's determinative. That means the consent form is irrelevant because the patient couldn't leave. I don't think that's in, that's not in any case that's been decided in Illinois for the last 30 years. And that's contrary to four or five clearly emergency room situations. I mean, in Frazados, you know, the court said nearly everyone in the emergency room was in some kind of stress. If we're going to let that play into this thing, then we're not going to ever have a hospital that's going to be able in an emergency room context. Well, or we might never have hospitals that hire independent contractors for emergency rooms because they recognize the nature of emergency rooms is so significantly different that they bear responsibility for that because people walk in an emergency. Gilbert was an emergency room case. If they wanted that to be in our law. You know, in a different case, somebody tried to argue that hospitals are like warehouses and people just sort of use them to perform medical services. An emergency room is not that. I understand where you're coming from and you can find some other states that talk about that issue in the way you're describing it. I mean, Mr. Reagan, he's a good friend and a great appellate lawyer. Most of his brief is about other states. Why? Because Illinois cases haven't had that distinction. They haven't applied that distinction because Gilbert was an emergency room case. Didn't say anything other than you have to give notice. Maybe the parties didn't bring the issue up properly in the Gilbert case. It was a case of first impression. That's for sure. Maybe they weren't, you know, teed up on it. Well, that could, I mean, we're just dealing with what the law, Illinois law is in front of us. And Illinois law has not embraced this concept that could you do anything differently. So that just hasn't been in play in any case in Illinois. I mean, let's go ahead. Is it your position? You seem to be saying that so long as a consent is signed that, you know, that the substance of the contents of the consent and the facts surrounding the manner in which it was given to the person who signs it, that none of that can ever be a question of fact. So long as it's signed. Is that, am I understanding? It all depends on the content of the consent form, but your case law, all the cases, they're all cited in our brief, have even said, if there's some isolated fact that might cause an ambiguity, that will be resolved if the consent form, as ours is, is a very clear and unambiguous statement of the non-employee, non-agent status of the physicians, or as here, a clear and unambiguous reliance disclaimer. Mr. Reagan doesn't mention that much in his brief or even in his argument. I mean, this is all, by the way, this is all large. This is all, at least, bold-faced, all-capped. In my decision to seek medical care at the hospital, is not based upon any understanding, representation, advertisement, media campaign, inference, presumption, or reliance of the physicians providing care and treatment to me, our employees are agents of the hospital or advocate healthcare. In the Steele case, all it said was, I acknowledge that employment or the employment or agency status of physicians who treat me is not relevant to my selection of Prevena Health for my care. And the court revert, the jury revert on that. They said, you're holding out language too uncertain. You had may in there, but this is good. No reliance, directive JNOV was entered. I mean, ours is way beyond that. And Steele said, that's a definite indicator that the plaintiff was not relying on the employee status of any of her treaters at Prevena seeking medical care. So, I mean, even if no matter how you view the holding out issue, this summary judgment can and should be affirmed simply on the reliance issue. Okay, let's hear a little rebuttal. Yes, there is a very dramatic conclusive reason as to why Gilbert did not touch this issue because the consent in Gilbert, and I quote at page 516 of the opinion, the consent that was used there said, quote, that the treatment and procedures will be performed by physicians and employees of the hospital. And so Gilbert did not involve independent contractors at all, the consent said there that the physicians will be and are employees of the hospital. I'm not aware, and we've documented in our brief, the next time the case came up in front of the Supreme Court, there was also a statement in the consent that was used there that these physicians are agents of the hospital. And so this issue has never been before the Supreme Court in any way. And Justice Coghlan, your question, I think is very pertinent in the position of the defendant in this case and others, as long as they can get a signature on a line at any time that says, what the consents written by the lawyers has to say that that's the end of the matter. And it's not, and that's why I emphasize also that this operates like an estoppel. And so can an estoppel be terminated? Can it be ended immediately upon a gotcha type signature like that? And it can't, and Justice Kaczynski, your comment about how hospitals should, might operate to resolve this problem and also how the emergency departments are different than elsewhere is also very pertinent. I represent to the court that I'm not aware of any case in which these issues have been presented in an appellate court to the extent that they have been here. The Wallace case, which my friend and the great lawyer, Mr. Griffin talked about, Wallace, the discussion there, it dealt with timing, but the real, it was only tangential. And the real issue there was the question of whether a consent was needed in the first place because of the emergency care that was being rendered to a minor. And therefore, if you render care to a minor, there's an issue as to whether you ever need consent to do that. And that's really all that case talked about. Justice Lavin, you've given me the opportunity for a little bit of rebuttal. And I think those are the most important things and I don't wish to tax the court's patience or time. Okay. Well, we'd like to thank you for your briefs and your argument. Very well done as usual. We will take the matter under advisement and issue an opinion forthwith. We are adjourned. Okay. Thank you, Your Honor.